*Exhibit 1*



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 33794970**
**Date Processed: 04/15/2026**

| | |
|---|---|
| **Primary Contact:** | Kathrine M Lorenz<br>DTE Energy Company<br>1 Energy Plz<br>16 WCB<br>Detroit, MI 48226-1221 |
| **Electronic copy provided to:** | Denise Wiginton<br>Denise Kempa<br>Elizabeth Dodge<br>Sarah Bello<br>Ann Hayes |

| | |
|---|---|
| **Entity:** | DTE Energy Company<br>Entity ID Number  4320604 |
| **Entity Served:** | Dte Energy |
| **Title of Action:** | Mariya Gessner, Personal Representative of the Estate of Patricia Marie Wood vs. Steven Wood through Christopher Wood Power of Attorney |
| **Matter Name/ID:** | Mariya Gessner, Personal Representative of the Estate of Patricia Marie Wood vs. Steven Wood through Christopher Wood Power of Attorney (19077056) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Wayne County Probate Court, MI |
| **Case/Reference No:** | 2026-914110-CZ |
| **Jurisdiction Served:** | Michigan |
| **Date Served on CSC:** | 04/14/2026 |
| **Answer or Appearance Due:** | 21 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | James C. Mccann, Esq.<br>734-421-7333 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

**CERTIFIED MAIL**



McC
ATTORNEYS &
32437 F
LIVONIA, MI

9589 0710 5270 1550 5674 60

FIRST-CLASS

US POSTAGE IMI PITNEY BOWES

ZIP 48154
02 7H
0006241900     APR 08 2026

$ 012.98⁰

DTE ENERGY
C/O CSC-LAWYERS INCORPORATING SERVICE
3410 BELLE CHASE WAY
STE. 600
LANSING, MI 48911

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy – Plaintiff<br>3rd copy - Return |
|---|---|---|

**STATE OF MICHIGAN**
JUDICIAL DISTRICT
JUDICIAL CIRCUIT
WAYNE COUNTY

**SUMMONS**

**CASE NO.**
2026-914110-CZ

**Court address**
1305 Coleman A. Young Municipal Ctr., Detroit, MI 48226

**Court telephone no.**
(313) 224-5707

**Plaintiff's name, address, and telephone no.**
Mariya Gessner, Personal Representative of the Est. of Patricia Marie Wood & Trustee of the Patricia Marie Wood Trust
5473 West Dartmoor Drive, Monroe, Michigan 48161
(734) 693-1239

v

**Defendant's name, address, and telephone no.**
DTE Energy c/o CSC-Lawyers Incorporating Service
3410 Belle Chase Way, Ste. 600, Lansing, Michigan 48911

**Plaintiff's attorney, bar no., address, and telephone no.**
James C. McCann, Esq.
32437 Five Mile Road, Livonia, Michigan 48154
(734) 421-7333

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case
[ ] There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
[ ] There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.
[ ] It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case
[ ] This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
[ ] MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
[x] There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
[ ] A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the

complaint has been previously filed in [ ] this court, [ ] _____ Court, where

it was given case number _____ and assigned to Judge _____ .

The action [ ] remains  [ ] is no longer   pending.

Summons section completed by court clerk.

**SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court and** serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>04/03/2026 | Expiration date*<br>07/06/2026 | Court clerk |
|---|---|---|

document is a full and correct copy of the original on file in the Wayne County Probate Court, State of Michigan ... received via official electronic seal of the Wayne County Probate Court. MCL 8.3n, MCL 565.232

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (3/23) **SUMMONS**

MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

Summons (3/23)                                                                    Case No. 2026- *9/4/10 -C2*

| PROOF OF SERVICE |

**TO PROCESS SERVER:** You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons. If you are unable to complete service, you must return this original and all copies to the court clerk.

| CERTIFICATE OF SERVICE / NONSERVICE |

[X] I served    [ ] personally    [X] by registered or certified mail, return receipt requested, and delivery restricted to the the addressee (copy of return receipt attached)    a copy of the summons and the complaint, together with the attachments listed below, on:

[ ] I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name<br>DTE Energy c/o CSC-Lawyers Incorporating Service | Date and time of service |
|---|---|
| Place or address of service<br>3410 Belle Chase Way, Ste. 600, Lansing, Michigan 48911 | |
| Attachments (if any)<br>Exhibits A, B, and C | |

[ ] I am a sheriff, deputy sheriff, bailiff, appointed court officer or attorney for a party.

[X] I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee<br>$ | Miles traveled | Fee<br>$ | |
|---|---|---|---|
| Incorrect address fee<br>$ | Miles traveled | Fee<br>$ | TOTAL FEE<br>$ |

Signature

Katie McCann
Name (type or print)

| ACKNOWLEDGMENT OF SERVICE |

I acknowledge that I have received service of a copy of the summons and complaint, together with

_____ on _____
Attachments (if any)                                                          Date and time

_____ on behalf of _____ .
Signature

_____
Name (type or print)

MCL 600.1910, MCR 2.104, MCR 2.105

# STATE OF MICHIGAN

## IN THE PROBATE COURT FOR THE COUNTY OF WAYNE

MARIYA GESSNER, Personal representative
Of the Estate of Patricia Marie Wood, and
MARIYA GESSNER, Trustee of the Patricia
Marie Wood Trust,

Plaintiff,

V.

STEVEN WOOD through Christopher Wood
Power of Attorney, EMPOWER Advisory Group, LLC.,
and DTE ENERGY

Defendants.

Probate File No: 2026- 9/4/10 -CZ
Honorable Terrance A. Keith

JAMES C. McCANN (P39311)
Attorney for Mariya Gessner
32437 Five Mile Road
Livonia, Michigan 48154
(734) 421-7333
jmccann@ProbateMI.com

## COMPLAINT FOR DECLARATORY RELIEF, SPECIFIC PERFORMANCE,

## CONSTRUCTIVE TRUST, INJUNCTIVE RELIEF, AND OTHER EQUITABLE RELIEF

Plaintiffs, Mariya Gessner, in her capacity as Personal Representative of the

Estate of Patricia Marie Wood, and Mariya Gessner, in her capacity as Trustee of the

Patricia Marie Wood Trust, by and through their attorney, James C. McCann, and for their

## 2025-905881-DE

1 | P a g e

Complaint for Declaratory Relief, Specific Performance, Constructive Trust, Injunctive Relief, and other Equitable Relief, state as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Mariya Gessner is the duly appointed Personal Representative of the Estate of Patricia Marie Wood.

2. Plaintiff Mariya Gessner is also the duly acting Trustee of the Patricia Marie Wood Trust.

3. Patricia Marie Wood died on June 10, 2023.

4. Defendant Steven Wood is the surviving spouse of Patricia Marie Wood.

5. Defendant Empower Advisory Group, LLC. (hereafter "Empower") is the administrator, claims handler, recordkeeper, and/or entity exercising control over benefits payable through the DTE Energy Company Savings and Stock Ownership Plan.

6. The retirement plan at issue is the DTE Energy Company Savings and Stock Ownership Plan.

7. This action concerns retirement-plan proceeds associated with Patricia Marie Wood and the parties' competing rights and obligations concerning those proceeds.

8. This Court has jurisdiction pursuant to MCL 700.1303 because this matter relates to a decedent's estate and trust and includes claims to determine property rights, hear contract proceedings by or against an estate or trust, impose a constructive trust, and grant equitable relief.

9. Venue is proper in Wayne County because the estate is pending in Wayne County and the requested relief concerns estate and trust property under this Court's supervision.

## GENERAL ALLEGATIONS

2 | P a g e

10. On June 27, 2019, Patricia Marie Wood and Steven Wood entered into a Prenuptial Agreement. (Exhibit A - Prenuptial Agreement).

11. Paragraph 20 of the Prenuptial Agreement specifically addresses retirement benefits and retirement accounts.

12. Paragraph 54 of the Prenuptial Agreement requires the parties to execute, acknowledge, and deliver such documents and take such actions as may be necessary or appropriate to carry out and accomplish the intent of the Agreement.

13. The DTE Energy Company Savings and Stock Ownership Plan is a principal asset associated with Patricia Marie Wood.

14. The plan materials identify the Patricia Marie Wood Living Trust as beneficiary. (Exhibit B – DTE Energy Plan).

15. After Patricia Marie Wood's death, Plaintiffs and/or other interested persons communicated with Empower regarding payment of the retirement-plan proceeds.

16. Empower asserted that ERISA surviving-spouse protections prevented distribution to anyone other than the spouse absent compliant written consent.

17. Steven Wood was incapacitated with dementia.

18. Christopher Wood, son of Steven Wood, acting under power of attorney for Steven Wood, executed the requested disclaimer on Steven Wood's behalf. (Exhibit C - Disclaimer).

19. Empower, however, rejected the disclaimer as untimely, asserting that it was submitted more than nine months after Patricia Marie Wood's death, although the Disclaimer was only requested by Empower after nine-months had passed.

3 | P a g e

20. As a result, Empower has refused to release the retirement-plan proceeds in a manner that resolves the rights of the Estate and Trust or adequately protects the fund.

21. Steven Wood is a necessary party because his rights may be affected by the Court's adjudication and complete relief cannot be granted in his absence.

22. An actual controversy exists between Plaintiffs and Defendants concerning the ownership, control, distribution, and proper handling of the retirement-plan proceeds.

23. Plaintiffs seek declaratory, contractual, and equitable relief to ensure that the retirement-plan proceeds are preserved and impressed with a constructive trust upon distribution.

24. Michigan probate courts have authority to impose a constructive trust where necessary to do equity or prevent unjust enrichment.

25. Michigan appellate authority also recognizes that disputes over retention of retirement proceeds may be litigated after payment to the recipient, rather than only as a challenge to plan administration before payment.

## DECLARATORY RELIEF

26. Plaintiffs incorporate by reference paragraphs 1 through 27 as if fully set forth herein.

27. Probate court can decide the parties' competing property rights and grant equitable relief in an estate/trust dispute under MCL 700.1303.

28. Declaratory relief is appropriate because there is an actual controversy over whether the proceeds belong beneficially to the Estate/Trust, whether Steven must cooperate under the prenup, and whether Empower may distribute only subject to protective relief.

4 | P a g e

29. Plaintiffs seek a declaration that the Prenuptial Agreement is valid and enforceable.

30. Plaintiffs further seek a declaration of the parties' respective rights under the Prenuptial Agreement, the trust, and the retirement-plan materials.

31. Plaintiffs further seek a declaration that any distribution made by Empower must be subject to further order of this Court sufficient to preserve the parties' rights pending final adjudication.

## SPECIFIC PERFORMANCE

32. Plaintiffs incorporate by reference paragraphs 1 through 32 as if fully set forth herein.

33. The Prenuptial Agreement is a valid and enforceable contract.

34. Paragraph 54 requires Steven Wood to execute and deliver such documents and take such action as may be necessary to carry out the intent of the Prenuptial Agreement.

35. To the extent any further act, consent, endorsement, cooperation, or acknowledgment is required to implement the agreement's treatment of retirement assets, Plaintiffs are entitled to specific performance.

36. The probate court has authority to hear contract proceedings by or against an estate or trust and grant equitable relief pursuant to MCL 700.1303.

## CONSTRUCTIVE TRUST

37. Plaintiffs incorporate by reference paragraphs 1 through 37 as if fully set forth herein.

38. A constructive trust may be imposed when necessary to do equity or prevent unjust enrichment; it is appropriate where one person holds property under circumstances such

5 | Page

that another, in good conscience, is entitled to the beneficial interest. *In re Filibeck Estate,* 305 Mich App 550 (2014).

39. The retirement-plan proceeds constitute a specific, identifiable, and traceable fund.

40. Equity requires that those proceeds, once distributed, be impressed with a constructive trust and preserved in a segregated account pending further order of this Court.

41. A constructive trust is appropriate where necessary to do equity, prevent unjust enrichment, or separate legal title from beneficial entitlement.

42. Plaintiffs request an order that any retirement-plan proceeds distributed by Empower, whether to Steven Wood or otherwise, be immediately deposited into a segregated constructive-trust account.

43. Plaintiffs further request that no withdrawal, assignment, transfer, expenditure, pledge, encumbrance, gift, or dissipation of those proceeds occur absent further order of this Court.

## INJUNCTIVE RELIEF

44. Plaintiffs incorporate by reference paragraphs 1 through 43 as if fully set forth herein.

45. Plaintiffs will suffer irreparable harm if the retirement-plan proceeds are distributed without protections and then commingled, transferred, or dissipated before this Court can determine the parties' rights.

46. Money damages are inadequate because the disputed property is a specific fund that can and should be preserved intact.

47. Plaintiffs therefore request temporary, preliminary, and permanent injunctive relief requiring that the proceeds be deposited into a segregated account immediately upon receipt and that no transfer or expenditure occur absent further order of the Court.

## ALTERNATIVE RELIEF AGAINST EMPOWER

48. Plaintiffs incorporate by reference paragraphs 1 through 47 as if fully set forth herein.

49. If the Court determines that Empower may not directly distribute the proceeds to the Trust because of Empower's asserted ERISA position, then Empower should at minimum be ordered to distribute the proceeds to Steven Wood subject to the constructive-trust and preservation provisions requested above.

50. If the Court determines that the Trust is entitled to direct payment under the governing plan documents and applicable law, then Empower should be ordered to distribute the proceeds accordingly.

51. This alternative count is pleaded to ensure complete relief among all parties before the Court.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and:

A. Declare the rights of the parties concerning the disputed retirement-plan proceeds;

B. Declare that the Prenuptial Agreement is valid and enforceable and that its retirement-benefit and further-assurances provisions may be specifically enforced;

C. Order Steven Wood to take any action necessary to carry out the intent of the Prenuptial Agreement;

D. Impose a constructive trust on the retirement-plan proceeds upon distribution;

7 | P a g e

E. Order that any distributed proceeds be deposited immediately into a segregated constructive-trust account;

F. Enjoin any withdrawal, transfer, assignment, encumbrance, gift, or expenditure of the proceeds absent further order of this Court;

G. Order Empower to distribute the proceeds in a manner consistent with the Court's declaratory and equitable rulings; and

H. Grant any such further legal and equitable relief as is just and proper.

I hereby declare under penalties of perjury, that I have read the foregoing and that the matters therein contained are true to the best of my information, knowledge, and belief.

Dated: March 23, 2026

Respectfully,

James C. McCann (P39311)
Attorney for Mariya Gessner
32437 Five Mile Rd.,
Livonia, MI 48154
(734) 421-7333

8 | P a g e

# EXHIBIT A

# PRENUPTIAL AGREEMENT

THIS PRENUPTIAL AGREEMENT (the "Agreement") is entered into on this 27th day of June, 2019, by and between PATRICIA M. ARMBRUSTER, hereinafter referred to as "Patricia", and STEVEN J. WOOD, hereinafter referred to as "Steven", and hereinafter collectively referred to as the "parties."

## WITNESSETH:

WHEREAS, the Parties have exchanged promises to marry and intend to be married on November 16th, 2019.

WHEREAS, the Parties desire and intend by this Agreement to define their respective rights in the property of the other, both during the marriage relationship and after its termination for any reason, and to avoid interests that, except for the operation of this Agreement, each might acquire in the property of the other as incidents of their marriage relationship.

WHEREAS, the Parties have been advised that under the laws of Michigan (MCL 700.2202, a copy of which has been provided to each Party), a husband or wife who has not made an agreement such as this, or one of similar effect, is upon the death of the other spouse entitled to take one-half of the sum or share that would have passed to the spouse had the testator (decedent) died intestate (without a will or trust), reduced by one-half of the value of all property derived by the spouse from the decedent by any means (joint tenancy) other than testate or intestate succession upon the decedent's death.

WHEREAS, each Party willingly enters into this Agreement and intends to become happily married and intends, by this Agreement, to promote and enhance their impending marriage. They also acknowledge their mutual peace of mind will be preserved by this Agreement, which disposes of their respective property or inheritance upon the event of a divorce of death, and each acknowledges this Agreement is fair and equitable.

WHEREAS, the parties further intend that, subject to the conditions set forth herein below, the express terms of this Agreement shall be controlling with regard to such rights and that the express terms hereof shall be in lieu of, and supercede, any rights either might have under any statute or common law governing the rights of married persons, including those incident to death and/or divorce; and

WHEREAS, each party has been fully apprised of the assets, liabilities, and income of the other, has been represented by independent counsel, has been fully advised of his or her rights by such counsel, and considers the terms and conditions of this Agreement to be fair and reasonable; and

1

WHEREAS, each party enters into this Agreement voluntarily and without duress, each fully understands all of the terms, conditions and provisions of this Agreement, and each believes the Agreement to be fair, just, adequate and reasonable as to each of them; and

WHEREAS, Patricia and Steven specifically acknowledge that they have elected to enter into this Agreement as an arms-length transaction, in reliance on the advice of, and consultation with, each party's respective counsel; and

WHEREAS, the parties acknowledge that the aforesaid recitations are not customary boilerplate legalese, but rather, are specifically negotiated provisions that form the basis and consideration for this binding agreement.

NOW, THEREFORE, in consideration of the premises and the promises and undertakings set forth in this Agreement, and for good and valuable consideration, the parties agree as follows:

### Consideration and Implementation of Agreement

1. Consideration. This Agreement is made in consideration of the marriage, and in consideration of the mutual promises of the parties contained in this Agreement.

2. Agreement Conditioned on Marriage. This Agreement is entered into in consideration of the marriage contemplated herein, and its effectiveness is expressly conditioned on such marriage between the Parties actually taking place. If, for any reason, the marriage does not occur, this Agreement will be of no force or effect.

3. This Agreement shall be binding upon the parties, and in the event of a divorce, it shall be presented to the court and admitted into evidence so as to govern the subject matter of this Agreement. Neither party shall take any action or assert any position contrary to the terms of this Agreement.

### Disclosures

4. Prior Marriages and Children: Patricia has no children and is a widow, having been married once before. Steven is twice divorced with three children, Christopher, Andrew, and Kayla.

5. Financial Disclosures: Patricia and Steven have made full disclosure to each other of their respective assets and income, as well as any liabilities each one has. Those disclosures are documented by Attachments A and B for Patricia and Attachments C and D for Steven, with each such attachment being made a part of this Agreement.

    A.   Patricia's Income, Property, and Estate:

        1)   Property and Estate: Patricia hereby represents to Steven that Patricia's property and estate, and any encumbrances thereon, exclusive of personal effects and the like, is as listed on *Exhibit A* attached hereto.

2

2) <u>Income</u>: Patricia recently retired from her employment and expects to earn approximately $100,000 per year from her investment income. Patricia's 2019 income disclosures are attached hereto as *Exhibit B*.

B. <u>Steven's Income, Property, and Estate</u>:

    1) <u>Property and Estate</u>: Steven hereby represents to Patricia that Steven's property and estate, and any encumbrances thereon, exclusive of personal effects and the like, is as listed on *Exhibit C* attached hereto.

    2) <u>Income</u>: Steven presently earns approximately $96,000 (tax free) per year from investment income, as displayed on the pages of Steven's 2019 income disclosures, attached hereto as *Exhibit D*.

C. <u>Review and Acknowledgment of Disclosures</u>: Each party has had ample opportunity to verify the information contained in the other's attachment and to investigate the disclosures of the other party. To the extent that no investigation has taken place, the lack of such investigation was the voluntary choice of such party and was not due to any duress or pressure imposed by the other party or to lack of sufficient time within which to conduct such investigation.

    1) Each party acknowledges that he or she has answered all questions asked about his or her income, resources, expectancies and assets. Each party acknowledges that some assets have no readily determinable market value, and that the value of any asset may vary over time. The parties have made reasonable efforts to set a value for each asset and they accept the values set forth on the respective attachments.

    2) Patricia and Steven agree that the referenced disclosures are not an inducement to enter into this Agreement. Patricia and Steven agree that each is willing to enter into this Agreement regardless of the nature, extent or value of the present or future assets, liabilities, income or expenses of the other, and regardless of any financial arrangements made for his or her benefit by the other.

    3) Steven hereby acknowledges that Steven has reviewed Patricia's personal financial statements attached to this Agreement and made a part hereof, and that all matters embodied herein, and all of Steven's questions pertinent to this Agreement, have been fully and satisfactorily explained to Steven.

        a) Steven has given due consideration to such matters and questions, and Steven clearly understands and consents to all of the provisions hereof.

        b) Steven has had the benefit of the advice of counsel of Steven's own selection, and Steven is entering into this Agreement freely, voluntarily, and with full knowledge.

    4) Patricia hereby acknowledges that Patricia has reviewed Steven's personal financial statements attached to this Agreement and made a part hereof, and that all matters embodied herein, and all of Patricia's questions

3

pertinent to this Agreement, have been fully and satisfactorily explained to Patricia.

  a)  Patricia has given due consideration to such matters and questions, and Patricia clearly understands and consents to all of the provisions hereof.

  b)  Patricia has had the benefit of the advice of counsel of Patricia's own selection, and Patricia is entering into this Agreement freely, voluntarily, and with full knowledge.

5)  The parties hereby acknowledge and understand that some assets reflected in the attached exhibits may include vested or unvested interests in closely held businesses and/or contingent beneficial trust interests, many of which are difficult to value, and for which the estimated fair market values generally may include considerations of lack of marketability, lack of control, built-in taxes, restrictions on transfer, and other such valuation-impacting features.

### General Intent and Statement

6.  General Intention: By this Agreement, the parties intend to define their respective rights, claims, title or obligations, referred to collectively as "interests," to or in all assets and liabilities of each party, as well as with respect to their income and expenses, both presently existing, and in the event of their divorce, separation or action for separate maintenance. For this purpose, this Agreement uses the following terms:

  A.  "Property" describes assets, liabilities, income and expenses.

  B.  "Marital" describes property in which both Patricia and Steven have an interest.

  C.  "Separate" describes property in which only one of the parties has an interest.

7.  Effect of Agreement: Patricia and Steven understand and acknowledge that, by the terms of this Agreement, upon the termination of the marriage by reason of divorce, he or she may receive an amount substantially different than he or she would otherwise be entitled to receive under the laws of Michigan, Florida, or any other state.

### Identification and Agreements with Respect to Separate Property

8.  Identification of Initial Separate Property: Except as specifically provided otherwise in this Agreement, Patricia and Steven agree that each party's separate property, as listed on Exhibits A and C, respectively, including any appreciation or depreciation in the value of such property over time, income derived from that property and any proceeds received from the sale of such property or other property received in exchange, on and after June 20th, 2019, will remain separate property of the owning party.

  A.  "Separate property" includes any asset or interest of any kind or type (regardless of whether the asset or interest is directly held in a party's individual name or indirectly held through an LLC, corporation, trust, or other ownership mechanism, and regardless of whether the entity holding the asset was formed by either of the parties during the marriage), as well as the active or passive appreciation in the

4

value of the separate property from the date of execution of this Agreement, continuing for as long as the owning party continues to have any interest in the separate property. Any contributions by the other party towards the upkeep, maintenance, utilities, taxes, improvement, insurance, or other expenses in any way related to a party's separate property – regardless of the source of funds used to make any such contributions – do not affect the separate property's status as separate property.

B.    Neither party shall have any marital or other right in the property of the other due to their marriage, monetary and/or non-monetary contributions made during the marriage, or in the event of their divorce, separation or action for separate maintenance, regardless of fault by either party for breakdown of the marriage, except as specifically provided by the Agreement.

9.    <u>Sole and Exclusive Rights over Separate Property</u>: Patricia and Steven each shall retain and enjoy sole and exclusive management and control of his or her separate property, both during his or her own lifetime, as though unmarried.

A.    In order to accomplish this intent of the Agreement, each of the parties hereby agrees to execute, acknowledge and deliver, at the request of the other party, his or her heirs, executors, administrators, grantees, devisees or assigns, any and all such deeds, releases, assignments or other instruments, and such further assurances as may be reasonably required or requested to effect or evidence the release, waiver, relinquishment or extinguishment of the interest of such party in the property of the other party under the provisions of this Agreement.

B.    Each party shall take all steps necessary to assure that each party shall have sole and exclusive management and control of his or her separate property, including, but not limited to, the power to sell and encumber their respective separate property, the power to gift their respective separate property without consent of the other party, the power to retain their respective property for his or her own in the event of divorce, separation or action for separate maintenance and the power to transfer their respective property to anyone upon death.

10.    <u>Compensation, Earnings, and Accretions on Separate Property</u>:

A.    <u>Income Unrelated to Separate Property</u>: All compensation or earnings of each party resulting from his or her personal services, skill, and/or efforts during the marriage shall remain his or her own respective separate property.

B.    <u>Income Related to Separate Property</u>: All active or passive income derived from separate property shall be the separate property of the person who owns the separate property that produces such income.

1)    Each party acknowledges that the other party may devote considerable personal time, skill, service, industry and effort during the marriage to the investment and management of his or her own separate property, and despite any such investment of time and effort, the production of income on or from his or her own separate property nonetheless shall remain the separate property of the person producing or receiving such income

5

relating to separate property which he or she owns.

2) The parties hereby recognize, acknowledge, and agree that even though the expenditure of either party's personal time, skill, service, industry and effort might constitute or create marital property or marital income in the absence of this Agreement, no such marital property or marital income shall be created thereby, and any income profits, accumulations, appreciation and increase in value of the party's separate property during the marriage shall be and shall remain entirely that party's separate property.

3) No contribution of either party to the acquisition, improvement, accumulation, maintenance or custody of the separate property of the other party – whether made in the form of money, property, or personal services – shall in any way alter or convert any portion of that property to marital property. Any such contribution shall become part of the separate property of the party that owns the affected separate property.

11. <u>Gifts and Inheritances</u>: Any gifts or inheritances of assets of any kind whatsoever (regardless of whether the asset or interest is directly held in a party's individual name or indirectly held through an LLC, corporation, trust, or other indirect ownership mechanism, and regardless of whether the entity holding the asset was formed by either of the parties during the marriage) received by either party from a party's parents, grandparents, aunts and uncles, siblings and other family members during the marriage shall be the separate property of the party whose family member(s) made the gift.

12. <u>No Obligation with Respect to the Other Party's Liabilities</u>. Neither party shall have the ability to encumber the separate property or income of the other at any time without the other's written consent.

13. <u>Commingling and Implied Transmutation</u>. Acts or statements made by either of the parties shall *not* be sufficient to transmutate or commingle separate property interests into marital property, except as specified in this Agreement or by an express written agreement executed by and between the parties subsequent to this Agreement. None of the following events, either individually or collectively, shall be considered evidence of an intention, either express or by implication, or of an agreement, actual or implied, to change the character of separate property into marital property:

A. The filing of a joint income tax return;

B. The designation of either spouse as a beneficiary of the other spouse's estate or trust;

C. The payment of a separate obligation and/or liability with joint funds and/or assets;

D. Any oral statements by either spouse; or

E. Any written document created by either spouse, other than a mutually-executed express written agreement.

6

## Waivers

14.  **Waivers with Respect to Property**: This Agreement shall constitute, and be evidence of, each party's waiver of all marital and any community property rights of each in the property of the other, as well as any rights of dower or curtesy, or other right or interest that either party may have or attain in the property of the other. Nothing in this Agreement, however, shall be construed as limiting the right of either party voluntarily to name the other as personal representative of his or her estate, to devise property to the other by will or to designate the other party as the beneficiary or trustee of any trust, or otherwise to make a gift or transfer property to the other.

15.  **Waiver of Spousal Support and Attorney Fees**: Each party hereby waives any right to any form of temporary or permanent alimony/spousal support, grant of attorney fees, expert witness fees, accountant fees, appraiser fees, or a specific division of property different from that set forth herein following a divorce, separation, or action for separate maintenance.

    A.  The parties agree that this Agreement related to spousal support and/or any other form of support is final, binding and non-modifiable as to each of them. The parties acknowledge that state law may allow a court to disregard any waiver or limitation on spousal support, such as set forth in this paragraph, if the court, at the time of enforcement of this Agreement, deems any portion of this Agreement to be unconscionable, and further that such law may apply even where the party against whom enforcement of this section is being sought was represented by independent legal counsel at the time this Agreement was executed. In agreeing to this provision, each party has been made aware of his or her rights under MCR 3.206, *Staple v Staple*, 241 Mich App 562 (2000), and analogous provisions, and each party hereby agrees to forgo his or her respective statutory right to petition any court for modification of this Agreement, regardless of the state in which a party ultimately may seek such a modification.

    B.  The parties acknowledge that their respective attorneys have explained the implications of such law to each of them, that they understand the implications of that law, and that they nonetheless desire to eliminate spousal support as set forth in this section of the Agreement.

16.  **Acknowledgements**: This Agreement sets forth in full their intentions and desires relative to spousal support, and that neither of them shall be entitled to any spousal support from the other. Both parties acknowledge that this Agreement is not unconscionable under all of the circumstances that now exist.

    A.  Even if a court in a marital dissolution action declines to enforce the spousal support provisions of this Agreement, the parties nonetheless acknowledge that each is able and intends to be and remain financially self-sufficient, and not to rely on the other party for spousal support.

    B.  The parties have carefully negotiated for the waiver of spousal support provided herein, and each party has been advised by his or her respective counsel that this waiver could work a great hardship on either or both parties. Nonetheless, each of

7

the parties has chosen, for his and her independent reasons, to proceed with this Agreement and to knowingly waive his or her respective spousal support rights and obligations as set forth herein.

C. *By initialing immediately below, each party specifically acknowledges that he or she has carefully read this section of this agreement, has had an opportunity to discuss, and has discussed the waiver of his or her spousal support rights with his or her respective counsel, and has elected to proceed with the execution of this agreement, and specifically acknowledges that this agreement forever waives his or her right to spousal support, consistent with Staple v Staple, 241 Mich App 562 (2000).*

_____  _____
Initials

17. <u>Waiver of Separate Maintenance or Invasion</u>: Each party understands that the laws of some states, often referred to as "equitable distribution" laws, allow the courts in divorce or other actions to order the transfer of separate property of one party to the other party. To avoid such a result in the event of a divorce or other action between the parties in this or another state, each party hereby waives any right that he or she otherwise might have on divorce, separation, or action for separate maintenance or invasion to receive a share of the other's separate property, for any and all reasons including, but not limited to, those set forth in MCL §552.23 and/or MCL §522.401, as well as analogous laws in other states.

## Marital Property

18. <u>Creation of Marital Property by Specific Action</u>: Patricia and Steven contemplate that they may wish, from time to time, to create Marital Property in which they share the benefits and burdens of ownership. Marital property may be created *only* in the manner described below in this Paragraph:

A. Marital property may be created only by (1) one or both parties transferring funds to a joint account in the names of both Patricia and Steven, (2) by a conveyance of property to both parties jointly by deed, or by a written declaration, or (3) by the creation of a joint bank, brokerage, insurance, or investment account or an LLC, corporation, trust, or other legal entity, held and/or owned jointly (but not necessarily equally) by both parties in both parties' individual names.

B. No property shall be deemed to be Marital Property in the absence of a clear, written intention of the parties to create it; for this purpose, the creation of a joint account or legal entity, held and/or owned by both parties' in both party's names, is a writing sufficient to qualify as written intention of the parties to create Marital Property.

C. For special occasions and from time to time, the parties may give gifts to each other. Any item of tangible personal property for which it is not customary to have a written title, and that is in the possession of one party, shall be deemed to

8

be that parties own separate property, acquired by that party from his or her own assets or gifted to him or her by the other. No other property that is separate property of one of the parties, as determined under this Agreement, shall be deemed a gift to the other unless such gift is clearly designated by written transfer of title to the other or similar written documentation evidencing the existence and intention of a gift to the other party.

19. <u>Rights in Marital Property</u>:

    A. In the event of the death of one party, the survivor shall be entitled to 100% of any Marital Property that has been titled as owned as tenants by the entirety or with rights of survivorship in the instrument creating the shared interest, and 50% of any other Marital Property, unless the instrument creating the shared interest specifically identifies a different percentage.

    B. Upon the filing of a complaint for divorce, separation, or an action for separate maintenance, each party shall be entitled to 50% of all Marital Property, unless the instrument creating the shared interest specifically identifies a different percentage for each. If the parties cannot agree on how to divide their joint assets, those joint assets shall be sold as quickly as possible at a commercially reasonable price, and the proceeds shall be equally divided.

    C. In making the division of any Marital Property in accordance with the foregoing, it shall not be necessary to split each piece of property, as long as the division of Marital Property in the aggregate conforms to the total percentage ownership of each party.

### Retirement Benefits

20. As of the date of this Agreement, each party has accrued pension benefit and/or account balance under one or more retirement plans of her employer as described in Internal Revenue Code Section 401(a), 403(b) and/or 457(b), and each party may earn or deposit additional amounts under the same or similar plans in the future.

    A. In general, the rights of a decedent's surviving spouse in such retirement benefits of the deceased spouse are determined by federal law under the Internal Revenue Code and, for non-governmental plans, the Employee Retirement Income Security Act. Under these federal statutes, such rights cannot be waived by the spouse without written notarized consent, and in the case of pension benefits, only during a limited period of time prior to the annuity starting date.

    B. The current outstanding balance or benefit right in any existing Individual Retirement Account or Individual Retirement Annuity that either party possess as of the date of the marriage shall be separate property of the person owning the plan interest.

    C. Retirement plan balances – funded by either party during the marriage with contributions from his or her own income unrelated to that party's separate property – shall be separate property. In the event of the divorce or separation of the parties, each agrees to petition for, and consent to, each party retaining his or

9

her own separate plan balances as his or her own separate property, free and clear of any and all claims by the other party.

D.  During the marriage, either party may take any action desired with respect to his or her retirement benefits as if those benefits were entirely his or her own separate property, even if that party's action would obviate the rights of the other as surviving spouse in the death benefits payable under those plans. When requested, each party shall assist the other to provide such consent in writing, in compliance with the applicable federal laws.

## Life Insurance

21.  Either party may, but neither one shall be obligated to, name the other party as beneficiary of any life insurance policy on his or her life, and for which he or she, or his or her employer, pays premiums.

## Taxes

22.  Filing Status: During the marriage, the parties may file income tax returns jointly or in such other filing status as will minimize their combined income tax liability each year.

23.  Income from Separate Property: The parties' combined income tax liability, to the extent attributable to a party's own separate property, shall be paid out of that party's own respective separate property, in proportion to the tax liability associated with such separate property, taking into account any deductions or credits attributable to such separate property. Each party shall indemnify and hold the other harmless with respect to all taxes associated with his or her own separate property.

24.  Taxes Related to Marital Property: Taxes attributable to marital property shall be paid out of the income from that property, or if there is insufficient income from such property, then from available marital funds; if there are insufficient marital funds, then equally by Patricia and Steven from their own separate property.

25.  Property Taxes: Property taxes attributable to separate property shall be paid from separate property. Property taxes attributable to martial property shall be paid from marital property, or equally by Patricia and Steven from their own separate property if there are insufficient marital funds.

26.  Deductions and Credits: The benefit of income tax deductions and credits, other than those directly attributable to the parties' separate property, will be shared equally by Patricia and Steven.

27.  Death Taxes: In the event of the death of either party, if the decedent's estate is liable for any federal or state estate and/or inheritance taxes, those taxes shall be paid proportionately from the decedent's separate property and his or her share of any marital/community property, as determined under this Agreement, that is included in the taxable estate, except to the extent allocated differently by the terms of the decedent's will or trust.

10

## Medical and Long-Term Care Expenses

28. <u>Payment for Own Insurance and Expenses</u>: In the event of divorce, separation or action for separate maintenance, each party agrees that he or she will pay for all of his or her own medical expenses, including the cost of health insurance, co-pays, deductibles and uncovered claims, unless both parties agree otherwise in writing. Each party agrees that his or her own assets will be used to pay for his or her own long-term care expenses. For this purpose, long-term care means home health care, adult day care, adult foster homes, homes for the aged, nursing homes, assisted living facilities and any other long-term care. Each party understands that the other party's assets will be taken into account in determining eligibility for governmental assistance, regardless of this Agreement.

29. <u>Representations Regarding Current Health</u>: Both parties represent that they are in general good health, taking into consideration their ages. Further, they agree that they have disclosed medical conditions that may have a significant impact upon their relationship and marriage. The parties acknowledge that changes in medical conditions are foreseeable.

## In the Event of Termination of the Marriage

30. <u>Definition of Termination of Marriage</u>: For the purposes of this Agreement, the marriage shall be deemed to have been terminated upon the filing of a subsequent complaint/petition for dissolution of the marriage and/or for separate maintenance. After the filing of a subsequent complaint/petition for dissolution of the marriage and/or for separate maintenance, the parties shall be deemed to be no longer married for the purposes this Agreement, and the parties hereby agree that this Agreement shall be interpreted accordingly.

31. <u>Patricia's Waiver of Rights to Steven's Separate Property</u>: In the event of a divorce or separation, Patricia shall not have any rights in or to Steven's separate property or his inchoate property and/or business interests, as defined in this Agreement, nor shall Patricia have any right appraise or assess the value of any such interests during any personal, marital proceeding, or support proceeding of any kind involving either of the parties.

32. <u>Steven's Waiver of Rights to Patricia's Separate Property</u>: In the event of divorce or separation, Steven shall not have any rights in or to Patricia's separate property or her inchoate property and/or business interests, as defined in this Agreement, nor shall Steven have any right appraise or assess the value of any such interests during any personal, marital proceeding, or support proceeding of any kind involving either of the parties.

33. <u>Joint Property</u>: In the event of a proceeding terminating the parties' marriage, as defined above, any and all joint marital property or property held as tenants by the entireties or as joint tenants shall divide equally between the parties.

34. <u>Terms of Divorce Decree</u>: The parties agree that in the event that an action or proceeding for a decree or judgment of divorce or separate maintenance is commenced by either of the parties, then the parties hereto consent, and shall again consent at the time of such action if so required by the court, to all of the terms of this Agreement, and agree that the

11

terms of this Agreement with respect to joint marital property and to separate property or inchoate property and/or business interests shall be fully referenced and incorporated in the decree or judgment, and that all rights and obligations of the parties shall be determined in accordance with the terms of this Agreement.

35. Binding Effect: The provisions stated in this Agreement, including but not limited to all waivers as described in the preceding paragraphs, are intended to be binding and effective, regardless of the cause or reason for any action for divorce or separate maintenance, and regardless of who may be at fault in the event of any action for divorce or separate maintenance between them, or who commences such action for divorce or separate maintenance, or if the residence or domicile of either or both of the parties is the State of Michigan or any other state or any other county.

### In the Event of Death of a Party

36. Joint Property: In the event of the death of Steven or Patricia, any and all property held as tenants by the entireties or as joint tenants shall pass to the other, either by will, trust, or by rights of survivorship.

37. Patricia's Waiver of Rights to Steven's Separate Property: In the event of Steven's death, Patricia shall not have any rights in or to Steven's separate property, as defined in this Agreement, unless such property has been specifically devised to Patricia by Steven in his estate planning documents.

38. Steven's Waiver of Rights to Patricia's Separate Property and/or Inchoate Interests: In the event of Patricia's death, Steven shall not have any rights in or to Patricia's separate property, as defined in this Agreement, unless such property has been specifically devised to Steven by Patricia in her estate planning documents.

39. Waiver of Rights of Expectancy and Election Upon a Death. Each Party waives, discharges, and releases all claims and rights, actual, inchoate, or contingent, in law and equity, that he or she may have upon the death of the other in the deceased Party's Separate Property, Marital Property, and Inheritances that the surviving Party would otherwise have by reason of the Parties' marriage, including but not limited to the following:

40. Either Party's right of election to take against the Will of the other.

41. Either Party's right to a distributive share in the estate of the other.

42. Either Party's right to act as a personal representative of the estate of the other or a trustee of a trust of the decedent.

43. This waiver shall not include rights the deceased Party shall have created in his or her Will, in a trust, in life insurance policies, annuities, or employment benefits plans, or by the creation of assets owned jointly in such a manner that they pass to the survivor by operation of law.

12

Wayne County Probate Court-Filed: 4/2/2026 1:50 PM

## Community Property Laws

44. If, at any time during the marriage, the parties become residents of a state under the laws of which husband and wife acquire property interests different from the property interests of husband and wife under the laws of the State of Michigan, or if the state has property laws commonly referred to as "community property," the parties' property interests shall nevertheless remain the same as they would have been under the terms and provisions of this Agreement, construed in accordance with the laws of the State of Michigan

45. The parties shall each, at any time during or after the termination of the marriage make, execute, acknowledge, and deliver any and all deeds and other instruments which shall be desirable or necessary to transfer any right, title or interest, in any property or estate of the other which they may acquire by virtue of any so-called community property laws to the person who would otherwise be entitled thereto by virtue of this Agreement.

## Amendments and Termination of Agreement

46. This Agreement may be amended by the parties from time to time, by a written document signed and dated by both parties and duly witnessed, and it shall remain in full force and effect, as amended, regardless of when or in what particular aspect it has been amended.

47. The failure or waiver of either or both of the parties, at any time, to observe and fully comply and/or enforce the terms of this Agreement, or the making of the transfers by either or both of the parties between themselves, by gift, sale, or otherwise, shall not impair the rights of either party to otherwise enforce this Agreement in all particulars.

48. Patricia and Steven may terminate this Agreement at any time after its execution, by written document signed and dated by both parties, duly witnessed and notarized.

## Severability of Provisions and Evidence

49. In the event a court of competent jurisdiction finds any provision or any part of any provision under this Agreement unenforceable or void for any reason, then this Agreement shall remain valid and enforceable as to the remainder of those provisions not so determined to be unenforceable or void.

50. In the event a court of competent jurisdiction finds this entire Agreement, or any provision thereof, void or unenforceable for reasons of public policy or for any other reason, then it is the express wish and desire of the parties, and they so agree, that this Agreement shall be used as a guideline for, and evidence in, any such court or court proceeding wherein a court must make any distribution, disposition, or settlement of the property of the parties.

## Confidentiality

51. Obligation to Protect Confidentiality: Although the parties may share this Agreement and the information on the attachments with each party's respective legal counsel, as well as each party's certified public accountant or other tax return preparer, the parties otherwise shall be obligated to protect the confidentiality of the Agreement and shall not disclose the existence of the Agreement, its terms, or any financial information obtained in the

13

preparation and review of this Agreement to any other person or entity, without the written consent of the other party.

52. Protective Order: In the event of a proceeding for divorce, separation, or action for separate maintenance, the parties agree that a protective order shall be entered with the court having jurisdiction over the proceeding; the terms of that order shall protect and keep confidential the Agreement, its exhibits, the documents reviewed in the preparation of the Agreement, and any other documents/information exchanged between the parties regarding this Agreement, each party's assets, and/or the value of those assets. The protective order shall survive any judgment or decree issued by the divorce court, and the terms and conditions of the protective order/confidential agreement shall continue to be binding on the parties in perpetuity, as set forth in the protective order/confidential agreement.

53. Submission Under Seal: The parties further agree that in the event of a proceeding for divorce, separation, or action for separate maintenance, this Agreement, its Attachments, and any reviewed documents shall not be made part of any court proceeding/filing unless submitted under seal. The Agreement, Attachments, and reviewed documents may be referred to in the proceedings to the extent necessary to enforce this Agreement, as may be required by the proceeding, but the documents may not be attached, incorporated, excerpted, summarized or quoted, except as provided herein.

## Necessary Documents

54. Patricia and Steven shall, whenever requested to do so by the other, execute, acknowledge, and deliver whatever additional instruments as may be necessary or appropriate to carry out and to accomplish the intention of this Agreement, and this Agreement may be specifically enforced by any court of competent jurisdiction upon the application of either party or of their respective heirs, personal representatives, or assigns.

## Miscellaneous Provisions

55. Amendments: This Agreement may be amended after its execution only by written instrument signed by both Patricia and Steven.

56. Governing Law and Interpretation: This Agreement shall be governed by Michigan law, except to the extent preempted by federal law, and without regard to the actual state of domicile of either or both parties. This Agreement is the result of the joint efforts of both parties and their attorneys. This Agreement and each of its provisions will be interpreted fairly, simply and not strictly for or against either party.

57. Binding Effect: This Agreement shall be forever binding and conclusive upon the parties, their heirs and assigns, and independent legal action may be brought to enforce the terms of this Agreement until it shall have been fully satisfied and performed. No waiver of a breach or default under any provision of this Agreement shall be deemed a waiver of such provision or of any subsequent breach or default of any kind. No delay or omission to exercise any right or power accruing upon any breach or default shall impair such right or power or be construed to be a waiver of any such breach or default or acquiescence therein.

14

58. Commitment to Execute Additional Instruments: Both parties agree that each shall, at the request of the other party, or his or her heirs or assigns, execute, deliver and properly acknowledge whatever additional instruments may be required to carry out the intention of this Agreement, and shall execute, deliver and properly acknowledge any deed or other documents in order to effectuate this Agreement.

59. Entire Agreement: This Agreement sets forth the entire Agreement between the parties with regard to the subject matter contained in it. All agreements, covenants, representations and warranties, expressed and implied, oral and written, of the parties with regard to the subject matter of this Agreement are contained in this document. All prior and contemporaneous conversations, negotiations, possible and alleged agreements, and representations, covenants and warranties with respect to the subject matter hereof are waived, merged herein and superceded hereby. The parties intend and agree that this Agreement shall conclusively constitute an integrated agreement.

60. Severability: If any provision of this Agreement is determined by a court or other authority to be void or unenforceable, the other provisions shall remain effective, and they shall be enforced as closely as possible in accordance with the general intent of the parties.

61. Photocopies/Electronic Copies: Any legible photocopy or electronic reproduction of this Agreement, made after execution of this Agreement by both parties and being duly notarized, shall be binding and enforceable in the same manner and to the same extent as an original.

62. Anticipated Changes in Circumstances: The parties anticipate and expect that over time, their individual and family circumstances may change; nonetheless, this Agreement shall be unaffected by any change in circumstances of either of the parties, including but not limited to the birth of children, any change in the employment, health, or financial circumstances of either party, both parties, or their children.

63. Fees, Costs, and Expenses: In the event that either party attempts to challenge the validity of this Agreement at any time in the future, that party shall be solely responsible for his or her own counsel fees, costs and expenses, as well as the counsel fees, costs and expenses of the other party.

### Exclusive Agreement

64. This Agreement contains the entire postnuptial agreement of Patricia and Steven. There are no representations, warranties, or promises other than those expressly set forth in this Agreement. This Agreement is not executed in reliance upon any representation or warranty which is not expressly set forth herein. In no event shall Patricia or Steven have any obligations or liability to the other or to any other person, except as otherwise expressly stated in this Agreement.

15

## Legal Representation

65. This Agreement affects and changes important legal rights of each party that otherwise would arise due to their marriage. For that reason, each party has retained and consulted with separate legal counsel before signing this Agreement.

66. Patricia's attorney Raymond K. Waldo, Esq., of *Creighton McLean & Shea PLC*, in Livonia, Michigan.

67. Steven has voluntarily elected not to engage the services of an attorney. Steven acknowledges that Raymond K. Waldo, Esq., of *Creighton McLean & Shea PLC* represents the interests of Patricia alone and does NOT represent Steven's interests. Stven's Wood's Sworn Answers to Interrogatories Signed Before Executing Prenuptial Agreement are attached as Exhibit E.

68. Each party acknowledges having ample time and opportunity to consult with legal counsel, and Patricia and Steven each represent that each understands this Agreement's legal effects. The degree to which each party has utilized the services of his or her own respective attorney(s) in regard to this Agreement has been his or her voluntary choice.

## Counsel Fees and Costs

69. The parties jointly shall be responsible for the payment of all attorney fees, costs, and expenses incurred in connection with the preparation of this Agreement.

## Applicable Law

70. This Agreement shall be governed in all respects, whether as to validity, construction, capacity, performance, or otherwise, by the laws of the State of Michigan.

16

The parties hereto, each being of sound mind and body, and being without disability of any form or nature to execute contracts on their own behalf, hereby acknowledge that they have read all of the provisions of this Agreement, and in witness whereof, they have executed this Agreement, freely and voluntarily, and without duress and as their own free act and deed.

Patricia M. Armbruster

Steven J. Wood

Date: 6-27-19

Date: 6-27-2019

17

## ACKNOWLEDGMENTS

State of Michigan           )
Count of Wayne              )

On June 21, 2019, before me, Charla A. Heiler, Notary Public, personally appeared **Patricia M. Armbruster**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, he executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Michigan that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

Charla A. Heiler
Notary public, State of Michigan, County of Wayne
My commission expires 10/18/2021

State of Michigan           )
County of Wayne             )

On June 21, 2019 before me, Charla A. Heiler, Notary Public, personally appeared **Steven J. Wood**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument, she executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Michigan that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

Charla A. Heiler
Notary public, State of Michigan, County of Wayne
My commission expires 10/18/2021

18

## ATTORNEY CERTIFICATIONS

The undersigned hereby certifies that he is an attorney at law duly licensed and admitted to practice in the State of Michigan; that he has been employed by and compensated by Patricia M. Armbruster, one of the parties to the foregoing Agreement; that he has advised and consulted with Patricia M. Armbruster in connection with her property rights and has fully explained to her the legal effect of the foregoing Agreement and the effect which it has upon rights otherwise obtaining as a matter of law; that Patricia M. Armbruster, after being duly advised by the undersigned, acknowledged to the undersigned that she understood the legal effect of the foregoing Agreement and she executed the same freely and voluntarily.

Dated: _6/27_, 2019

_Raymond K. Waldo_

19

# EXHIBIT B

Empower
P.O. Box 173764
Denver, CO 80217-3764



*8515 East Orchard Rd*
*Greenwood Village, CO 80111*

*Send Death Certificate*
*with my name*
*address*
*email, ph*

## DTE ENERGY COMPANY SAVINGS AND STOCK OWNERSHIP PLAN



AB 01 002539 14325 H 11 A

PATRICIA M WOOD
48715 PINEHILL DR
PLYMOUTH MI 48170

| Statement Period: | 01/01/2024 - 03/31/2024 |
| Participant ID: | 17156096 |
| Plan: | 150095-01 |

*sent on 5-24*

### What is my account balance?

**$1,561,499.20**

As of 03/31/2024

### Where can I go for help?

| Website: | dte401k.com |
| Phone: | 1-844-DTE-401K |
| TTY: | 1-800-345-1833 |
| Mail: | Empower |
| | P.O. Box 173764 |
| | Denver, CO 80217-3764 |

### How has my account changed?

| | Employee | Employer | Total |
| --- | --- | --- | --- |
| Balance as of December 31, 2023 | $1,068,127.20 | $433,221.69 | $1,501,348.89 |
| Change in Value | 47,016.88 | 13,133.43 | 60,150.31 |
| Balance as of March 31, 2024 | $1,115,144.08 | $446,355.12 | $1,561,499.20 |
| Vested Balance as of March 31, 2024 | $1,115,144.08 | $446,355.12 | $1,561,499.20 |
| Vesting information provided as of March 31, 2024 | | | |

You are enrolled in Online Advice, the professional management service offered by Empower Advisory Group, LLC. Any applicable fees for this service have been included as an expense on this statement. For specific questions on fees, please contact a client service representative through your plan's customer service number.

Your Investment Advisor's Form ADV Parts 2A and 2b (the Brochure) are updated from time to time when material changes have occurred but at least annually. To request a copy of this disclosure statement at no charge, call us at your plan's customer service number or you may view the Brochure on your online retirement account.

### How will my future contributions be invested?

To view your investment elections for your future contributions, please visit your plan's website.



**EMPOWER**

ADDR-Y     70773478925042024

Page 1 of 9

Wayne County Probate Court-Filed: 4/2/2026 1:50 PM

# DTE ENERGY COMPANY SAVINGS AND STOCK OWNERSHIP PLAN

PATRICIA M WOOD
17156096

## How is my account being funded?

| | Beginning Balance | Deposits | Dividends /Change in Value | Withdrawals /Expenses /Transfers | Ending Balance | Percent Vested | Vested Balance |
|---|---|---|---|---|---|---|---|
| Employee After-Tax | 5,004.14 | | 315.46 | | 5,319.60 | 100% | 5,319.60 |
| Employee Pre-Tax | 1,063,123.06 | | 46,701.42 | | 1,109,824.48 | 100% | 1,109,824.48 |
| Company Match | 433,221.69 | | 13,133.43 | | 446,355.12 | 100% | 446,355.12 |
| Totals | 1,501,348.89 | | 60,150.31 | | 1,561,499.20 | | 1,561,499.20 |

## How have my stock investments changed?

| | Beginning Balance | Deposits | Change in Value | Fund Transfer | Withdrawals | Stock Purchase | Ending Balance |
|---|---|---|---|---|---|---|---|
| DTE Energy Company Stock Fund | | | | | | | |
| Shares | 9,011.293 | | 85.392 | | | | 9,096.685 |
| Cost | 454,022.30 | | 9,191.52 | | | | 463,213.82 |
| Market Value | | | | | | | 1,020,102.25 |

## Who are my beneficiaries?

| Type | Name | Relationship | Percent |
|---|---|---|---|
| Primary | Patricia M Armbruster Living Trust | Trust | 100.00% |

## What is my paycheck contribution information?

| | |
|---|---|
| After Tax | 0% |
| Roth | 0% |
| Age 50 Catch Up | 0% |
| Before Tax | 0% |
| Age 50 Catch Up Roth | 0% |

Participants age 50 and older may make additional catch-up contributions of $7,500 for 2024.

Wayne County Probate Court-Filed: 4/2/2026 1:50 PM

EXHIBIT C

## RETIREMENT PLAN BENEFICIARY QUALIFIED DISCLAIMER
### INTERNAL REVENUE CODE §2518

With regard to the benefits payable in respect of _Patricia M. Wood_

(Participant/IRA Account Owner) under _17156096_ _____(Retirement Plan), Participant Number/Account Number _150095-01_ _____/_____(the "Account"),

I, _Steven J. Wood_ _____("Disclaimant") hereby irrevocably and unconditionally refuse to accept the following property:

__X__ My entire interest and right in and to the benefits payable under the Account;

_____ A Portion of my interest and right in and to the benefits payable under said Account

equal to $_____; or _____%;

I affirm that I have not previously accepted any interest in or the benefits of the property I am hereby disclaiming; I understand that by executing this Disclaimer, the property I am disclaiming will not be paid to me, but will instead pass as though I had predeceased the person creating the interest; I understand that the property I am disclaiming must pass without any direction on my part;

I understand that in order for this Qualified Disclaimer to be effective, I must file it with the Retirement Plan no later than nine (9) months after the day on which the Participant/IRA Account Owner died; and agree to hold harmless the plan administrator and trustee/custodian of the Retirement Plan with respect to this Qualified Disclaimer.

I understand the effect of executing this Qualified Disclaimer.

_(signature)_ _____     _11-17-25_
Signature of Disclaimant                Date

_Christopher Wood_
Print Name of Disclaimant

State of __MI__ )

)ss

County of _Wayne_ )

The foregoing instrument was acknowledged before me on this _17_ day of __November__ 20_25_ by_Christopher Wood_____,proved to me on the basis of satisfactory evidence to be the person who appeared before me.

_(signature)_____
Notary Public

My Commission Expires: _June 25, 2026_

> TERRY MOSLIMANI
> Notary Public - State of Michigan
> County of Wayne
> My Commission Expires Jun 25, 2026
> Acting in the County of _Wayne_

FOR OFFICE USE ONLY:

DATE THE DISCLAIMER RECEIVED: _____
DATE OF DEATH OF THE PERSON CREATING THE INTEREST: _____

This is merely a <u>SAMPLE</u> draft of a Qualified Disclaimer. This SAMPLE document may or may not contain provisions which are applicable to your situation. This sample addresses only the federal requirements that a Qualified Disclaimer must satisfy. You should consult with your attorney (or tax advisor) for advice as to the effect of a Qualified Disclaimer before executing one as well as for information regarding the legal requirements which must be satisfied under the law of the state in which you reside.